IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| SEAN MARBLE, § | |
| § | |
| Plaintiff § | |
| § | |
| and § | |
| § | |
| EUGENE DURST, § | |
| § | |
| Intervenor § | CIVIL ACTION NO. 7:23-00009 |
| § | |
| v. § | |
| § | |
| CROWNQUEST OPERATING, LLC, § | |
| SEMINOLE PIPELINE COMPANY LLC § | |
| LINE LOCATORS LP, AND § | |
| ENTERPRISE PRODUCTS OPERATING, § | |
| LP, § | |
| § | |
| Defendants. § | |

**NOTICE OF REMOVAL**

MAY IT PLEASE THE COURT:

Defendants Enterprise Products Operating, LP ("Enterprise") and Seminole Pipeline Company, LLC ("Seminole") (collectively the "Defendants") file this Notice of Removal pursuant to 28 U.S.C. §§ 1367 and 1441 and hereby remove to this Court the above-captioned civil action filed in the 441st Judicial District Court of Midland County, Texas and bearing the cause number CV57006. Defendants respectfully show the Court the following in support of this Notice:

**I.     INTRODUCTION**

On December 15, 2022, Plaintiff Sean Marble ("Plaintiff") served an expert report on Defendants identifying, for the first time, federal regulations that purportedly establish a duty owed by Defendants under his state law negligence action. That expert report made clear that Plaintiff's

-1-

claims involve a substantial question of federal law in that they require a resolution of 49 C.F.R. §§ 195.410 and 195.412, which purportedly require pipeline operators to place permanent, visible line markers over their pipelines and to inspect the surface condition near its pipelines. Consequently, Defendants seek to remove Plaintiff's action to this Court so that the federal questions involved may be resolved by a federal court.

## II.   ATTACHMENTS

Accompanying this Notice of Removal are the following:

1) The JS 44 Civil Cover Sheet;

2) The Supplement to the JS 44 Civil Cover Sheet;

3) A copy of all process, pleadings, and orders filed in the state court, all of which are attached hereto as Exhibits A-1 – A-205;

4) A copy of Plaintiff's expert report—the report of Edward Lihan—attached hereto as Exhibit B; and

5) A copy of co-Defendants' consents to this removal, which are attached hereto as Exhibits C and D, and which will also be filed separately from this Notice.

## III.   FACTUAL BACKGROUND

This lawsuit involves Plaintiff Sean Marble ("Plaintiff") and Eugene Durst's ("Intervenor" or "Durst") personal injury claims arising from a July 28, 2020, trenching accident near Hwy 137 and County Road 3800 in Big Springs, Texas.[1] Plaintiff and Durst were injured when Durst, without authorization, operated a trenching machine in an area that had not been reported to One Call and had not been communicated to Defendants, striking the pipeline operated by Enterprise and owned by Seminole.

---

[1] Ex. A-100 at 2 (Pl.'s 3d Am. Pet.).

Plaintiff filed his Original Petition with this Court on September 10, 2020, naming CrownQuest as the only defendant.[2] On July 27, 2021, Marble filed his First Amended Petition adding defendant Enterprise Products Operating, LP.[3] Seminole was added at a later date.[4] On April 4, 2022, Plaintiff filed his Third Amended Petition adding defendant Line Locators LP to this lawsuit.[5] On July 25, 2022, Durst intervened in this lawsuit bringing his own claims for personal injuries against all defendants.[6] Neither the Original Petition, the Amended Petitions, nor the Petition Intervention mentioned and alleged violation of 49 C.F.R. §§ 195.410 or 195.412 as a basis for liability. Plaintiff alleged a plethora of alleged failures by Defendants supporting his claims, one of those failures being that Defendants "[v]iolated applicable rules, regulations and standards."[7] No other allegations in any of Plaintiff's Petitions mentioned any specific rules, regulations, or standards that Defendants violated.

Plaintiff's Original, First Amended, Second Amended, and Third Amended Petitions all make the same relevant allegations against Defendants. Plaintiff's First Amended Petition was filed only to add Enterprise and companies affiliated with Enterprise as defendants to this action.[8] Plaintiff's Second Amended Petition was filed only to remove all Enterprise-affiliated companies

---

[2]    Ex. A-1 at 2 (Pl.'s Orig. Pet.).

[3]    Ex. A-50 at 2 (Pl.'s 1st Am. Pet.).

[4]    Ex. A-87 at 2 (Pl.'s 2d Am. Pet.).

[5]    Ex. A-100 at 2 (Pl.'s 3d Am. Pet.).

[6]    Ex. A-111 at 1–2, 3–5 (Intervenor's Orig. Pet. in Intervention).

[7]    Ex. A-100 at 6 (Pl.'s 3d Am. Pet.).

[8]    Ex. A-50 at 2 (Pl.'s 1st Am. Pet.).

from this action, except Enterprise, and to add Seminole as a defendant.[9] Finally, Plaintiff's Third Amended Petition was filed only to add Line Locators LP as a defendant to this action.[10] Otherwise, Plaintiff made no relevant changes to any of his petitions.

In those petitions and, in particular, Plaintiff's Third Amended Petition, Plaintiff alleges causes of action for negligence, negligence per se, and gross negligence against Defendants.[11]

After filing his Third Amended Petition, Plaintiff served the report of his expert, Edward Lihan, on Defendants on December 15, 2022.[12] Mr. Lihan offered his opinion in that report that Enterprise violated 49 C.F.R. § 195.410 by not placing a sufficient number of permanent "line markers in the area of the Enterprise right-of-way to alert Eugene Durst of the danger as he was approaching the unmarked pipeline," and that it violated 49 C.F.R. § 195.412 by not inspecting its right-of-way during the period of time that construction activities occurred on it.[13] Mr. Lihan also opined that Enterprise acted contrary to The Common Ground Alliance "*Best Practices Guide*" Section 2.5 for the same reasons it violated 49 C.F.R. § 195.410, and that Enterprise violated its own Damage Prevention Program for the same reasons it violated 49 C.F.R. § 195.412.[14] He then concluded that such failures "contributed to" Plaintiff's alleged injury.[15]

---

[9]   Ex. A-87 at 2 (Pl.'s 2d Am. Pet.).

[10]  Ex. A-100 at 2 (Pl.'s 3d Am. Pet.).

[11]  Ex. A-100 at 5–6 (Pl.'s 3d Am. Pet.).

[12]  Ex. B (Report of Edward Lihan).

[13]  Ex. B at 15, 16 (Report of Edward Lihan).

[14]  Ex. B at 16–17, 18–19 (Report of Edward Lihan).

[15]  Ex. B at 24 (Report of Edward Lihan).

Plaintiff's expert report was the first notice Defendant's received that Plaintiff's claims involved federal law. It is now clear that Plaintiff seeks to have federal regulations interpreted and resolved in his favor in order to obtain relief. Accordingly, Defendants remove this action to this Court, so that it may resolve the federal issues presented.

## IV.     ARGUMENT AND AUTHORITIES

Defendants may remove civil actions brought in state court to a federal court that has original jurisdiction over the action. 28 U.S.C.A. § 1441(a) (2022). Federal courts have original jurisdiction over claims involving diversity of citizenship and claims arising under federal law. *Id.* §§ 1441(b), (c). Whether federal question jurisdiction exists here will be determined by: 1) whether Plaintiff's expert report may be considered under the "other paper" doctrine; 2) whether this removal is timely because of the "other paper" doctrine; and 3) whether Plaintiff's state-law claims involve a substantial question of federal law.

### A.     The expert report may be evaluated as part of Plaintiff's petition as an "other paper."

Whether removal is proper under federal question jurisdiction is determined by the well-pleaded complaint rule: federal jurisdiction exists only if the face of the plaintiff's complaint presents a federal question. *Eggert v. Britton*, 223 Fed. Appx. 394, 397 (5th Cir. 2007). However, courts may utilize the "other paper" doctrine in some circumstances to determine whether the complaint presents a federal question. *Id.*; *Freeman v. Phillips 66 Co.*, No. 14-2257, 2014 WL 7330620, at *2 (E.D. La. Dec. 18, 2014); *Brinkley v. Universal Health Servs., Inc.*, 194 F. Supp. 2d 597, 598 (S.D. Tex. 2002). Under this doctrine, an "other paper" may be considered as part of a complaint to clarify the ambiguous nature of the complaint. *Freeman*, 2014 WL 7330620 at *2. To constitute an "other paper," the document must be (1) the result of a voluntary act by the

plaintiff, and (2) sufficient to give the defendant notice of the changed circumstances now supporting federal jurisdiction. *Id.*

A plaintiff's expert report may be considered as part of a complaint under the "other paper" doctrine.[16] As was held in *Brinkley*, a plaintiff's expert's testimony is the result of a voluntary act by the plaintiff and may, depending on the testimony, be sufficient to give the defendant notice of the changed circumstances supporting federal jurisdiction. *Brinkley*, 194 F. Supp. 2d at 600. In that case, the plaintiffs alleged negligence and medical malpractice against the defendants. *Id.* at 597. The plaintiffs deposed their expert, where the expert testified that the plaintiffs were asserting a claim under the Emergency Medical Treatment and Active Labor Act ("EMTALA")—a federal act. *Id.* The defendants then filed their notice of removal, contending that federal question jurisdiction existed. *Id.* The court upheld the removal based on the "other paper" doctrine because the deposition testimony constituted a voluntary act of the plaintiffs. *Id.* at 599. The questions that gave rise to the experts testimony regarding EMTALA were asked by the plaintiffs themselves, and, by inquiring about EMTALA, they tacitly asserted a federal claim and the facts that would invoke EMTALA. *Id.*

Similarly, in this case, Plaintiff's expert report may be considered as part of his Third Amended Petition under the "other paper" doctrine. First, Plaintiff's expert report clarified the ambiguous nature of his Third Amended Petition. Plaintiff's Third Amended Petition alleges only that Enterprise is liable for negligence, negligence per se, and gross negligence for violating

---

[16] *Fink v. Regis Corp.*, No. 11-01873, 2012 WL 601449, at *5 (W.D. La. Feb. 22, 2012) (holding that an expert report was an "other paper" rendering the case removable); *Nicole v. Sch. Dist. of Philadelphia*, No. 16-cv-1457, 2016 WL 3456924, at *3 (E.D. Pa. June 20, 2016) ("[W]e find that the expert reports as well as the correspondence between the parties' attorneys are 'other paper' that could indicate a case has become removable under 1446(b)."); *Gibson v. Clean Harbors Envtl. Servs., Inc.*, 840 F.3d 515, 522 (8th Cir. 2016) (expert report was "other paper" for removal under CAFA).

"applicable rules, regulations and standards" without mentioning the rules, regulations, and standards Enterprise allegedly violated. Plaintiff's expert report clarified that his liability allegations stem from violations of 49 C.F.R. § 195.410 and § 195.412.[17] Next, as in *Brinkley*, Plaintiff's expert report is the result of Plaintiff's voluntary act, because the contents of the report were necessarily adopted by Plaintiff and voluntarily served on the Defendants. *See Brinkley*, 194 F. Supp. 2d at 600. By voluntarily serving his expert report while knowing of its contents, Plaintiff tacitly asserted the claims contained therein and the facts underlying those claims like the plaintiffs in *Brinkley* tacitly asserted a federal claim and the facts underlying that claim because, in both cases, the expert's testimony was offered in support of the claims in the petition and was entirely free of any manipulation by the defendants. *See id.* Finally, Plaintiff's expert report was the first notice Enterprise received of Plaintiff's intent to assert federal claims against it instead of only state-law claims. Plaintiff's expert report gave Enterprise notice of those changed circumstances that now support federal jurisdiction because Plaintiff's petitions made no mention of any federal claims, asserted claims that, as pleaded, could only be filed in a state court, it cited to state laws and regulations, and it invoked no federal regulations as the basis for his claims. For those reasons, Plaintiff's expert report may be evaluated as part of his Third Amended Petition to invoke federal question jurisdiction.

     **B.**    **Defendants' notice of removal is timely.**

Notices of removal must be filed within 30 days of the day the removing defendant receives a copy of the initial pleading containing the claim for relief the civil action is based upon. 28 U.S.C.A. § 1446(b)(1). If the initial pleading is not removeable, the defendant's 30-day deadline for filing a notice of removal begins on the day the defendant first receives an amended pleading,

---

[17]    Ex. A-100 at 6 (Pl.'s 3d Am. Pet.); Ex. B at 15, 16 (Report of Edward Lihan).

motion, order, or "other paper" giving the defendant notice that the case is one that may, or has become, removeable. 28 U.S.C.A. § 1446(b)(3); *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996). An initial pleading is not removable if it does not "reveal on its face" the requisite jurisdictional facts. *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir. 1992) (holding that an initial pleading was not removable under diversity jurisdiction because the face of the pleading did not reflect the damages being claimed).

Defendants' 30-day deadline for removal began when it received Plaintiff's expert report. As is further explained above, none of Plaintiff's petitions were initially removable because none alleged on their faces that Defendants violated any federal rules or regulations, and Plaintiff's expert report—an "other paper"—was the first time Defendants were put on notice that this case is one that is removable. *See id.* Defendants' deadline for removal, therefore, is 30 days from the date it received Plaintiff's expert report. Plaintiffs' expert report was served on Defendants on December 15, 2022, at approximately 8:00 p.m., via email. This Notice of Removal is being filed within 30 days, so removal is timely.

        **C.    Federal question jurisdiction exists because Plaintiffs' Third Amended Petition involves a substantial question of federal law.**

A federal question exists for federal question jurisdiction if a well-pleaded complaint either contains a federal cause of action or the plaintiff's right to relief depends on the resolution of a substantial question of federal law. *Bd. of Comm'rs of Se. La. Flood Prot. Auth.—E. v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 721 (5th Cir. 2017). Plaintiff's petition does not, on its face, contain any federal causes of action, so removal will be proper only if it depends on the resolution of a substantial question of federal law. Claims depend on the resolution of a substantial question of federal law if the following elements are met (the "Substantial Question Test"): "(1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually

disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities." *Id.*

> 1. ***Plaintiff's claim that Defendants were negligent in failing to place a sufficient number of permanent pipeline markers requires the resolution of federal law.***

Under the first element of the Substantial Question Test, a federal issue is necessary to resolution of a state-law claim if a federal law is alleged as an exclusive basis for holding defendants liable for some of their actions. *Id.* at 722. For example, in *Tenn. Gas Pipeline*, a state law negligence claim qualified for federal question jurisdiction because the plaintiff alleged a federal regulation as a basis for the duty owed by the defendant. *Id.* at 722–23. The key allegations in that case were the plaintiff's negligence and nuisance claims against the defendants claiming that their oil and gas activities caused land loss that resulted in an increased storm surge risk. *Id.* at 720. It cited to three federal regulations and various state regulations to establish the duty owed by the defendants, but none of the claims relied on any causes of action created by federal law. *Id.* at 720–21. The defendants removed the case to federal court, but the plaintiff moved to remand, which the district court denied. *Id.* at 721. On appeal, the court held that the case was properly removed because no state law existed that could establish the duty the plaintiff sought to establish via its reference to federal regulations. *Id.* at 723. The plaintiff's claims requested relief for multiple, distinct injuries, and referred to many sources of law that could establish a duty of care. *Id.* at 722. However, using both state law and federal law to establish duties of care did not necessarily establish that the federal law references were only alternative pleadings. *Id.* Instead, those references established that some of the causes of action drew exclusively on federal law to establish a duty, and those federal laws had no state law counterpart requiring the defendants to take actions to an extent identical to those required by the federal laws. *Id.* As such, to find in favor of the plaintiff on those causes of action would have required the district court to decide whether

the federal laws created a duty of care that otherwise did not exist under state law, rendering the resolution of federal law necessary to the resolution of a state-law claim. *Id.* at 723.

A contrary conclusion would be reached if, instead, a petition alleged specific injury-causing conduct that could have violated either federal or state law. *See, e.g.*, *MSOF Corp. v. Exxon Corp.*, 295 F.3d 485, 490 (5th Cir. 2022). For example, the plaintiff in *MSOF* alleged that the defendants were liable for negligence and strict liability for contaminating the plaintiff's land with toxic chemicals. *Id.* It alleged that the defendants maintained their facility "in violation of both state, local and federal regulations," then specifically noted the defendants' negligent conduct without specifying which, if any, were in violation of any state or federal laws. Petition at 7, *MSOF v. Exxon Corp.*, No. 407574, 2004 WL 5597483 (La. Dist. Ct. Dec. 22, 2005). The court held that resolution of a federal question was not necessary to the resolution of the state-law claims because the petition did not specifically allege that its claims were dependent on any violations of any federal laws. *MSOF*, 295 F.3d at 490. Of course, the petition mentioned that the facility was maintained "in violation of . . . federal regulations," but it did not specify that it sought to hold the defendants liable for any conduct that violated any federal regulations. *Id.* That distinction was necessary to the court's holding in *Tenn. Gas Pipeline*, where it reasoned that *MSOF*'s holding was not controlling, because the petition in *Tenn. Gas Pipeline* sought, specifically, to hold the plaintiffs liable for conduct that violated a federal regulation. *Tenn. Gas Pipeline*, 850 F.3d at 722.

Here, like *Tenn. Gas Pipeline*, Plaintiff's claim that Defendants were negligent in failing to place a sufficient number of permanent pipeline markers and in failing to sufficiently inspect the surface condition near the pipeline requires the resolution of federal law. Plaintiff asserts claims for negligence, negligence per se, and gross negligence, and, like the plaintiff in *Tenn. Gas Pipeline*, relies on both federal law and non-federal law bases to establish the duties of care owed

-10-

by Enterprise for those claims.[18] In *Tenn. Gas Pipeline*, Louisiana law did not require dredged or modified lands to be restored to their natural state to the identical extent required by federal law and instead only required such lands be restored to the maximum extent practicable—meaning compliance with Louisiana law did not equate to compliance with federal law. *Id.* at 722. Here, Plaintiff cites to 49 C.F.R. § 195.410 via his expert report to establish that Defendants had a duty to place and maintain permanent, visible line markers over the pipeline to a greater extent than the permanent line markers then in place, and he cites to 49 C.F.R. § 195.412 via his expert report to establish that Defendants had a duty to inspect the surface conditions near the pipeline to a greater extent than they did.[19] These federal regulations have no Texas-law counterpart that require operators to place permanent markers or inspect surface conditions near pipelines "to the identical extent that" these federal regulations do. *Tenn. Gas Pipeline*, 850 F.3d at 721.[20] Therefore, like *Tenn. Gas Pipeline*, "a court would not be able to establish the magnitude of any potential liability without construing" § 195.410 and § 195.412 because only those federal regulations would establish liability for an operator's failure to place a sufficient number of permanent pipeline markers over its pipeline or its failure to sufficiently inspect the surface conditions near the pipeline. *See Tenn. Gas Pipeline*, 850 F.3d at 722.

---

[18]   Ex. A-100 at 6 (Pl.'s 3d Am. Pet.); Ex. B at 15, 16 (Report of Edward Lihan).

[19]   Ex. B at 15, 16 (Report of Edward Lihan).

[20]   Texas law requires operators to maintain visible line markers over pipelines only after being notified that an excavator intends to excavate property near the operator's pipeline and only if the operator believes marking the location is necessary. TEX. UTIL. CODE ANN. § 251.157(a); 16 TEX. ADMIN. CODE ANN. § 18.5(a). In the event an operator must mark a pipeline, the marks must be "at sufficient intervals to indicate clearly the approximate horizontal location and direction of the underground pipeline or pipelines," and the distance between such markers "shall not exceed 20 feet." ADMIN. CODE § 18.8(f). Unlike § 195.410, Texas law does not require the markers to be permanent or to contain any warning on a background of sharply contrasting color—the markers are generally only valid for 14 days and the markers may be stakes, paint, flags, or any combination thereof. ADMIN. CODE §§ 18.6(b), 18.8(e). Finally, Texas law has no requirements for operators inspect surface conditions near pipelines on a recurring basis.

Plaintiff may wish to argue that, like *MSOF*, his federal law claims are only asserted as alternative bases for his claims and that he also alleged other bases that are unrelated to any federal laws, such as The Common Ground Alliance "*Best Practices Guide*" and Enterprise's own Damage Prevention Program. That argument would not be enough to show that his petition does not arise under federal law. The petition in *MSOF*, unlike Plaintiff's petition, never specifically alleged that a violation of a federal law formed the bases for any of its claims, and all of its claims were capable of being resolved without reference to any federal laws. *MSOF*, 295 F.3d at 490. Plaintiff's Third Amended Petition and his expert report, however, specifically allege that Enterprise was negligent by failing to comply with 49 C.F.R. § 195.410 and § 195.412, which require a sufficient number of permanent pipeline markers to placed over a pipeline and for the surface conditions near the pipeline to be regularly inspected.[21] While the "*Best Practices Guide*" section cited by Plaintiff's expert recommends a similar standard for marker placement be followed, it also clarifies that the standard's purpose is to identify underground facilities—"not to locate for excavation or circumvent the one call process."[22] 49 C.F.R. § 195.410 makes no such distinction, and Plaintiff's expert claims that pursuant to 49 C.F.R. § 195.410, Defendants should have placed more permanent markers to "alert an excavator of the immediate danger of approaching the buried pipeline."[23] The "*Best Practices Guide*," therefore, may not be used to show that Defendants' failure to place a sufficient number of permanent pipeline markers in the instance at hand was negligent. *See Tenn. Gas Pipeline*, 850 F.3d at 723. Additionally, Enterprise's

---

[21] Ex. A-100 at 6 (Pl.'s 3d Am. Pet.); Ex. B at 15, 16 (Report of Edward Lihan).

[22] COMMON GROUND ALLIANCE, BEST PRACTICES VERSION 18.0 ch. 2.05, https://bestpractices.commongroundalliance.com/2-Planning-and-Design/205-Markers-for-Underground-Facilities

[23] Ex. B at 15 (Report of Edward Lihan).

own Damage Prevention Guidelines provide requirements similar to those in 49 C.F.R. § 195.412.[24] However, under Texas law, those guidelines are not evidence of a standard of care owed by Defendants because those guidelines are merely Enterprise's own internal policies. *See FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 92 (Tex. 2004). Because Plaintiff's non-federal regulation bases do not establish a duty or standard of care owed by Defendants under Texas law, Plaintiff's Third Amended Petition is distinguishable from *MSOF* for the same reason the petition in *Tenn. Gas Pipeline* was distinguishable from *MSOF*—each petition seeks to hold the defendant liable for violating a federal regulation which has no state-law equivalent. *Tenn. Gas Pipeline*, 850 F.3d at 722. Accordingly, Plaintiff's claims necessarily require a court to construe federal regulations, which meets the first element of the Substantial Question Test.

> **2.      *The federal issue in Plaintiff's Third Amended Petition is actually disputed, substantial, and will not disturb the balance of federal and state judicial responsibilities.***

Regarding the second element of the Substantial Question Test, the federal regulation is actually disputed. The second element is met with evidence that one party disagrees with another party's interpretation of the federal statute. *Tenn. Gas Pipeline*, 850 F.3d at 723. Here, 49 C.F.R. § 195.410 is not clear on what number of pipeline markers are required so that the pipeline's location is accurately known, and Enterprise does not agree with Plaintiff's contention that not enough pipeline markers existed to make its location accurately known. The second element, therefore, is met.

Turning to the third element of the Substantial Question Test, the federal issue here is substantial. A federal issue is substantial if the goal of developing a uniform body of federal law would be undermined by state adjudication of the issue. *Id.* at 724. In *Tenn. Gas Pipeline*, the issue

---

[24]      Ex. B at 17–19 (Report of Edward Lihan).

was substantial because the plaintiff sought to create a duty based on application of a federal regulation, and holding for the plaintiff would mean that conduct regulated by an extensive federal permitting scheme was actually subject to implicit, state-created restraints. *Id.* Here, the issue at hand is substantial for the same reasons: Plaintiff seeks to create duties based on application of 49 C.F.R. § 195.410 and § 195.412,[25] and a holding for Plaintiff would mean that conduct regulated by an extensive federal permitting scheme—placing permanent markers along a pipeline's location—is actually subject to implicit, state-created restraints in that a state could determine that an operator is liable for damages under § 195.410 and § 195.412 even if a federal agency, in interpreting and promoting the interests of its own permitting scheme, were to determine it is not. Such a holding would give Texas effective control over activities over which its legislature has exhibited no intent to control, but that the federal government has exhibited clear intent to control. As such, the federal issues presented in this matter are substantial, thereby meeting the third element of the Substantial Question Test.

Finally, under the fourth element of the Substantial Question Test, federal jurisdiction will not disturb the balance of federal and state judicial responsibilities. When the question of whether a federal law creates a duty under a state's law is unsettled, allowing federal jurisdiction over the claim will not disturb the judicial responsibilities of state and federal courts because little risk exists that a federal docket will be filled with state law claims until it is established that the federal law in fact creates a duty under a state's law. *Id.* at 725. Here, no clear precedent refutes or agrees with Plaintiff's expert's contention that 49 C.F.R. § 195.410 and § 195.412 impose any duties on operators under Texas law. As such, little risk exists that a federal docket will be filled with state-law claims arguing that an operator is liable under Texas law for violating 49 C.F.R. § 195.410

---

[25]   Ex. A-100 at 6 (Pl.'s 3d Am. Pet.); Ex. B at 15, 16 (Report of Edward Lihan).

and § 195.412. Because little risk exists that the federal docket will be overwhelmed with state-law claims, the fourth element of the Substantial Question Test is met.

### D. The Court may exercise supplemental jurisdiction over the remaining claims in Plaintiff's petition.

When courts have original jurisdiction over a civil action, they also have supplemental jurisdiction over all other claims arising from the same case or controversy. 28 U.S.C.A. § 1367(a). All of Plaintiff's claims arise from its allegation that a pipeline exploded and caused his injuries.[26] Accordingly, Defendants respectfully request that the Court exercise supplemental jurisdiction over all claims asserted in this action by Plaintiff.

### E. All co-Defendants have consented to this removal.

Pursuant to 28 U.S.C.A. § 1446(b)(2)(A), all co-Defendants have consented to the removal of this action. Copies of written consent are attached hereto as Exhibits C and D, and will also be filed separately with this Court.

## V. CONCLUSION

Plaintiff's expert report may be evaluated as part of the Plaintiff's petition under the "other paper" doctrine. Because that doctrine applies here, and because Plaintiff's expert report was received by Defendants less than 30 days prior to the date of this filing, this Notice of Removal is timely. Finally, the Court has federal question jurisdiction over Plaintiff's state law negligence claims because they involve a substantial question of federal law, and the Court may exercise supplemental jurisdiction over the remaining claims.

For those reasons, Enterprise Products Operating, LP and Seminole Pipeline Company, LLC request that this action be removed from the 441st Judicial Court of Midland County, Texas

---

[26] Ex. A-100 at 2–3 (Pl.'s 3d Am. Pet.).

to this Court. Defendants further request all other relief to which they may be entitled.


Dated: January 13, 2023                    Respectfully submitted,

                                            **LISKOW & LEWIS**

                                            By:   */s/ Sam A. Allen*
                                            Sam A. Allen
                                            Texas State Bar No. 24116022

OF COUNSEL (pending admission         First City Tower
to the Western District of Texas           1001 Fannin Street, Suite 1800
or admission pro hac vice):                   Houston, Texas  77002
                                            Telephone:  (713) 651-2900
**LISKOW & LEWIS**                               Telecopier:  (713) 651-2908
                                            Email: saaallen@liskow.com
Michael P. Cash
Texas State Bar No. 03965500            and
Wade T. Howard
Texas State Bar No. 00787725            Denis Dennis
Robert J. Montoya                           Texas State Bar No. 05655566
Texas State Bar No. 00797107            Kelly, Morgan, Dennis, Corzine
1001 Fannin Street, Suite 1800           & Hanson, P.C.
Houston, Texas 77002                     4840 E. University Blvd., Suite 200 (79762)
Telephone: (713) 651-2900               P.O. Box 1311
Telecopier (713) 651-2908                Odessa, Texas 79760-1311
Email: mcash@liskow.com                 Telephone: 432-367-7271
Email: wthoward@liskow.com             Telecopier: 432-363-9121
Email: rjmontoya@liskow.com             Email: ddennis@kmdfirm.com

                                            *Attorneys For Defendants*
                                            *Enterprise Products Operating, LP and*
                                            *Seminole Pipeline Company, LLC*

## **CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the foregoing Defendants Enterprise Products Operating, LP and Seminole Pipeline Company, LLC's Notice of Removal is being served on all counsel of record this 13th day of January 2023, as indicated below:

| | | |
|---|---|---|
| Randall O. Sorrels | Certified U.S. Mail – RRR | ☐ |
| Alexandra Farias-Sorrels | | |
| Sorrels Law | Email | ☐ |
| 5300 Memorial Drive, Suite 270 | | |
| Houston, Texas 77007 | Commercial Delivery | ☐ |
| 713.496.1100 Telephone | | |
| 713.238.9500 Facsimile | Facsimile | ☐ |
| randy@sorrelslaw.com | | |
| alex@sorrelslaw.com | Personal Delivery | ☐ |
| eservice@sorrelslaw.com | | |
| ***Attorneys for Intervenor Eugene Durst*** | **E-Filing/E-Service** | ☒ |
| | | |
| Michael I. Ramirez | Certified U.S. Mail – RRR | ☐ |
| David E. Irwin | | |
| McCoy Leavitt Laskey, LLC | Email | ☐ |
| 20726 Stone Oak Parkway | | |
| San Antonio, Texas 78258 | Commercial Delivery | ☐ |
| Tel. 210-446-2828 | | |
| Fax. 262-522-7020 | Facsimile | ☐ |
| E-mail: mramirez@mlllaw.com | | |
| E-mail: dirwin@mlllaw.com | Personal Delivery | ☐ |
| ***Attorneys for Defendant CrownQuest Operating, LLC*** | **E-Filing/E-Service** | ☒ |

| | | |
|---|---|---|
| Natasha T. Taylor<br>State Bar No. 24071117<br>Bradley C. Williams<br>State Bar No. 24110534<br>One Riverway, Suite 2200<br>Houston, Texas 77056<br>(713) 572-4321<br>(713) 572-4320 (facsimile)<br>taylor@wrightclosebarger.com<br>williams@wrightclosebarger.com<br>***Attorneys for Defendant***<br>***CrownQuest Operating, LLC*** | Certified U.S. Mail – RRR<br>Email<br>Commercial Delivery<br>Facsimile<br>Personal Delivery<br>**E-Filing/E-Service** | ☐<br>☐<br>☐<br>☐<br>☐<br>☒ |
| Jason A. Itkin<br>Noah M. Wexler<br>Ben Bireley<br>ARNOLD & ITKIN, LLP<br>6009 Memorial Drive<br>Houston, Texas 77007<br>Tel. 713-222-3800<br>Fax. 713-222-3850<br>E-mail: jitkin@arnolditkin.com<br>E-mail: nwexler@arnolditkin.com<br>E-mail: bbireley@arnolditkin.com<br>***Attorneys for Plaintiff***<br>***Sean Marble*** | Certified U.S. Mail – RRR<br>Email<br>Commercial Delivery<br>Facsimile<br>Personal Delivery<br>**E-Filing/E-Service** | ☐<br>☐<br>☐<br>☐<br>☐<br>☒ |
| Brian Carney<br>Law Office of Brian Carney<br>1202 W. Texas Avenue<br>Midland, Texas 79701<br>(432) 686-9300 – Telephone<br>(432) 686-1947 -Facsimile<br>brian@carneylawfirm.net<br>***Attorneys for Plaintiff***<br>***Sean Marble*** | Certified U.S. Mail – RRR<br>Email<br>Commercial Delivery<br>Facsimile<br>Personal Delivery<br>**E-Filing/E-Service** | ☐<br>☐<br>☐<br>☐<br>☐<br>☒ |
| | Certified U.S. Mail – RRR | ☐ |

| | | |
|---|---|---|
| Bob Craig | | |
| John Simpson | Email | ☐ |
| Craig, Terrill, Hale & Grantham, LLP | | |
| 9816 Slide Road, Suite 201 | Commercial Delivery | ☐ |
| Lubbock, Texas 79424 | | |
| Phone: (806) 744-3232 | Facsimile | ☐ |
| Fax: (806) 744-2211 | | |
| bobc@cthglawfirm.com | Personal Delivery | ☐ |
| ***Attorneys for Defendant*** | | |
| ***Line Locators, LP*** | **E-Filing/E-Service** | ☒ |

*/s/  Sam A. Allen*
    Sam A. Allen